IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| AMBER EDWARDS, | Civil Action No. |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| WATTS & BROWNING ENGINEERS, INC., | |
| Defendant. | |

## COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff Amber Edwards ("Plaintiff" or "Ms. Edwards"), by and through undersigned counsel, and files this Complaint for Damages, and shows the Court as follows:

## I. NATURE OF COMPLAINT

1.

Plaintiff brings this action for damages, liquidated damages, and reasonable attorney fees for Defendant's violation of her rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII"), violations of the

Fair Credit Reporting Act (hereafter the "FCRA"), 15 U.S.C. §1681 et seq., as amended, and various state laws.

## II.  ADMINISTRATIVE PROCEDURES

2.

Plaintiff has fulfilled all conditions necessary to proceed with this cause of action under Title VII.  Plaintiff filed her charge of discrimination against Defendant with the EEOC on May 20, 2020; the EEOC issued its Notice of Right to Sue on or about September 2, 2020.

3.

Plaintiff timely files this action within ninety (90) days of receipt of the Notice of Right to Sue from the EEOC.

## III.  JURISDICTION AND VENUE

4.

Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. §§ 1331 and 1343, and take out the FLSA reference and include supp jurisdiction for state claims.

5.

The unlawful employment practices alleged in this Complaint were committed within this district.  In accordance with 28 U.S.C. § 1391, venue is appropriate in this Court.

## IV.   PARTIES

6.

Plaintiff is a female citizen of the United States of America and is subject to the jurisdiction of this Court.

7.

At all times relevant to this matter, Defendant Watts & Browning Engineers, Inc. ("Defendant" or "Watts & Browning") employed Ms. Edwards.  Ms. Edwards submits herself to the jurisdiction of this Court.

8.

Defendant is a domestic profit corporation conducting business in Georgia, and at all times material hereto Defendant has conducted business within this District.

9.

Defendant may be served with process by delivering a copy of the summons and complaint to its Registered Agent, Brian M. Dubuc, located at 3225 Shallowford Road, Suite 1200, Marietta, GA 30062.

10.

Defendant is now and, at all times relevant hereto, has been engaged in an industry affecting commerce. During all times relevant hereto, Defendant has employed fifteen (15) or more employees for the requisite duration under Title VII. Defendant is therefore covered under Title VII in accordance with 42 U.S.C. § 2000e(b).

## V.  **FACTUAL ALLEGATIONS**

11.

Defendant hired Ms. Edwards as a temporary employee in June 2018.

12.

In November 2018, Defendant offered Ms. Edwards a full-time position as an Administrative Assistant.

13.

In December 2018, Ms. Edwards resigned and relocated out of state.

4

14.

Defendant contacted Ms. Edwards in January 2019 and asked her to return to Georgia in order to assist with training the new Administrative Assistant; Ms. Edwards agreed.

15.

Before returning home, Defendant offered Ms. Edwards the opportunity to continue to work for Watts & Browning remotely.  Ms. Edwards accepted the part-time position.

16.

In March 2019, upon Ms. Edwards's relocation back to Georgia, Defendant promoted her to a full time Project Assistant position.

17.

Ms. Edwards began the Project Assistant position on March 28, 2019.

18.

Not long after Ms. Edwards's return, Ms. Edwards assumed the job duties of the Administrative Assistant, in addition to those of the Project Assistant, without any additional compensation.

19.

The workplace was male-dominated, with few female employees.

20.

The female employees, including Ms. Edwards, were often subjected to "jokes" or comments of a sexual nature.

21.

Male employees made comments about the body parts of female vendors and/or delivery people, and made innuendos about having sex with them.

22.

Male employees would often talk about their "dicks."

23.

For example, Greg Ramsey, an IT employee, said that his migraines were attributed to lack of sex, because the pressure builds in his brain until it is released

24.

These "jokes" were made in front of both male and female employees; the male employees would laugh, which only encouraged the behavior to continue.

25.

In addition to the sexual harassment, Ms. Edwards and other female employees were also subjected to gender-based discrimination by Defendant.

26.

Virgil Hammond, the Vice President and Ms. Edwards's direct supervisor, would often yell and bang his fists on his desk when speaking to her.

27.

Mr. Hammond did behave similarly when speaking with male employees. No other male employees were required to perform the duties of two positions without additional compensation.

28.

Upon Ms. Edwards's return to the office in or about April 2019, she asked Mr. Hammond about assuming some of the responsibilities of a Drafter in Training who had recently left.

29.

As a Project Assistant, the duties of a Drafter in Training were in line with her position.

30.

In response to Ms. Edwards's request, Mr. Hammond stated that it was "complicated" and that they would rather she focus on the "day to day women responsibilities" such as running reports and billing with the Operations Supervisor (who was also a woman).

31.

In mid-2019, Ms. Edwards was assisting Dana Graves, the HR Director/Operations Manager, with recruiting a new Civil Engineer.

32.

President Daryl Cook directed them to focus on skills and male resumes only.

33.

Mr. Cook told Ms. Edwards in June 2019 that her work pace had slowed, and that he understood that "being a woman, [we] could be a bit slower and are looking for perfection instead of just getting the task completed."

34.

On or about June 24, 2019, Ms. Edwards met with Ms. Graves to complain about the ongoing sexual "jokes" and gender-based discrimination.

35.

At the time of Ms. Edwards's complaint, Ms. Graves was the only other female employee at Watts & Browning.

36.

While Ms. Graves attempted to address the complaints by way of a staff training in July 2019, the behaviors of the male employees did not change.

37.

Ms. Graves resigned soon after, in part due to the hostile work environment and gender-based discrimination.

38.

From November 2019 through January 2020, Mr. Hammond asked Ms. Edwards to help with the ordering of office toiletries and kitchen supplies because it seemed more logical to have a woman deal with the general upkeep of the office.

39.

On March 11, 2020, Ms. Edwards requested a meeting with Mr. Cook.

40.

At the meeting, which was held outside of the office, Ms. Edwards again raised her objections to the the ongoing harassment and discrimination that both herself and other female employees had been enduring.

41.

Ms. Edwards also reported to Mr. Cook that other females had left the company because of the harassment and gender discrimination.

42.

When Mr. Cook asked Ms. Edwards if she was giving her notice, she responded that she was not, but that she did not know what else to do.

43.

Ms. Edwards told Mr. Cook that she had been offered a position elsewhere.

44.

Mr. Cook replied that he understood that she had to do what was best for her family, but asked that she give him a chance to correct the situation.  Ms. Edwards agreed, but nothing changed.

45.

On March 23, 2020, Ms. Edwards notified Mr. Hammond that she was ill and that she may have contracted COVID-19.

46.

Mr. Hammond instructed Ms. Edwards not to return to work until she was tested.

47.

Within a few days, the rest of the office began working remotely.  Ms. Edwards continued to work from home.

48.

Defendant terminated Ms. Edwards on April 20, 2020.

49.

Ms. Edwards never resigned from her employment with Watts & Browning.

50.

Defendant terminated Ms. Edwards in retaliation for her complaints of sexual harassment and gender-based discrimination.

51.

Defendant was aware of its male employee's propensity to sexually harass its female employees, including Ms. Edwards.

52.

The sexual harassment was severe or pervasive, altering the terms and conditions of Plaintiff's employment.

53.

Defendant chose not to take reasonable steps to prevent sexual harassment from occurring, despite its knowledge of its employee's propensity for sexual harassment.

54.

Defendant failed to take appropriate remedial actions to correct the sexual harassment.

55.

Defendant was aware of its male employee's propensity to subjects its female employees, including Ms. Edwards, to gender-based discrimination.

56.

The discrimination was severe or pervasive, altering the terms and conditions of Plaintiff's employment.

57.

Defendant chose not to take reasonable steps to prevent discrimination from occurring, despite its knowledge of its employee's propensity to discriminate against its female employees.

58.

Defendant created a hostile work environment that Ms. Edwards was required to endure as a condition of her employment.

59.

Although Defendant purports to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pre-text.

60.

Others outside of the Ms. Edwards's protected class, i.e. male employees, were treated differently.

## CLAIMS FOR RELIEF

## COUNT ONE:  SEXUAL HARASSMENT
## IN VIOLATION OF TITLE VII

61.

Plaintiff re-alleges paragraphs 11-60 as if set forth fully herein.

62.

Defendant's actions in subjecting Plaintiff to severe and ongoing sexual harassment constitute unlawful discrimination on basis of Plaintiff's gender in violation of Title VII.

63.

Defendant willfully and wantonly disregarded Plaintiff's rights, and its discrimination against Plaintiff was undertaken in bad faith.

64.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity, and to otherwise adversely affect her status as an employee because of her gender.

65.

As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has been made the victim of acts that have adversely affected her psychological and physical well-being.

66.

Accordingly, Defendant is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful discrimination and retaliation.

**COUNT TWO:  GENDER DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**

67.

Plaintiff re-alleges paragraphs 11-60 as if set forth fully herein.

68.

Defendant's actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination on the basis of her sex in violation of Title VII.

69.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination against Plaintiff was undertaken in bad faith.

70.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunities and has otherwise adversely affected her status as an employee because of her sex.

71.

As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has been made the victim of acts that have adversely affected her psychological and physical well-being.

72.

Accordingly, Defendant is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful discrimination.

## COUNT THREE:  RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

73.

Plaintiff re-alleges paragraphs 11-60 as if set forth fully herein.

74.

Defendant's actions, as detailed above, in retaliating against Plaintiff because of her protected activity (complaining about the gender based harassment and discrimination to management) constitutes unlawful intentional retaliation in violation of Title VII.

75.

Defendant willfully and wantonly disregarded Plaintiff's rights, and Defendant's retaliation against Plaintiff was undertaken in bad faith.

76.

Accordingly, Defendant is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful retaliation.

## COUNT FOUR:  NEGLIGENT FAILURE TO PREVENT SEXUAL HARASSMENT

77.

Plaintiff re-alleges paragraphs 11-60 as if set forth fully herein.

78.

Defendant had a duty to Ms. Edwards to prevent sexual harassment in the workplace.

79.

By virtue of the aforementioned conduct by Defendant's male employees, and the failure of Defendant to prevent sexual harassment, Defendant failed to use ordinary care to prevent sexual harassment in the workplace, causing Plaintiff to be sexually harassed.

80.

The conduct of Defendant was consciously or recklessly indifferent to the inevitable or probable consequences of its conduct in failing to remedy the harassment.

81.

Defendant is thus liable to Plaintiff for damages to her peace, happiness and feelings sustained as a result.

## COUNT FIVE:  NEGLIGENT AND WRONGFUL HIRING, RETENTION, AND SUPERVISION

82.

Plaintiff re-alleges paragraphs 11-60 as if set forth fully herein

83.

Defendant knew, or in the exercise of ordinary diligence, should have known of the propensity of its male employees to engage in sexually offensive conduct toward other employees, and Ms. Edwards in particular.

84.

The male employees' actions were not wholly unrelated to their employment

85.

Defendant nevertheless failed and refused to act to protect Ms. Edwards from sexual harassment.

86.

Defendant is thus liable to Ms. Edwards for all of the damages sustained as a result.

## COUNT SIX:  INTENTIONAL INFLICTION OF
## EMOTIONAL DISTRESS

87.

Plaintiff re-alleges paragraphs 11-60 as if set forth fully herein.

88.

Defendant's conduct was extreme and outrageous.

89.

Defendant allowed Plaintiff to be subjected to sexual harassment and failed to take any corrective action.

90.

Defendant intended to inflict severe emotional distress or knew that it was a high probability that the conduct would do so.

91.

Defendant's conduct actually caused severe emotional distress to Plaintiff.

92.

Defendant is liable for all general and special damages proximately resulting from the intentional infliction of emotional distress.

## COUNT SEVEN:  PROMISSORY ESTOPPEL

### 93.

Plaintiff re-alleges paragraphs 11-60 as if set forth fully herein.

### 94.

By and through its sexual harassment policies, Defendant promised to prohibit the type of conduct endured here by the Plaintiff, to also take allegations of sexual harassment seriously and to ensure those who file charges in good faith are not retaliated against.

### 95.

Defendant should have reasonably expected Plaintiff to rely on the promise.

### 96.

Plaintiff did reasonably rely on the promise to her detriment.

### 97.

Injustice can be avoided only by enforcing the promise.

## COUNT EIGHT:  ASSUMPTION OF DUTY

### 98.

Plaintiff re-alleges paragraphs 11-60 as if set forth fully herein.

99.

Defendant has voluntarily assumed and undertaken the duty to prevent and eliminate sexual harassment in the workplace.  Therefore, Defendant has a legal duty to prevent and eliminate sexual harassment in the workplace in a non-negligent manner.

100.

The employer is in the best position to end sexual harassment in its workplace.

101.

By implementing a sexual harassment policy and disciplining employees for violations of the policy, sexual harassment is preventable.

102.

 Employees depend on a harassment free working environment.

103.

Defendant has voluntarily assumed a duty to investigate and remedy complaints of sexual harassment.

104.

Defendant delegates authority to supervisors over employees.

105.

Sexual harassment should not be a risk of employment.

106.

Sexual harassment is socially harmful behavior.

107.

Plaintiff suffered harm due to her reliance on Defendant to prevent sexual harassment.

108.

Plaintiff relied to her detriment in the fact that Defendant undertook the duty to prevent sexual harassment.

109.

Defendant's failure to exercise reasonable care increased the risk of harm to Plaintiff and other employees.

110.

Defendant's failure to exercise reasonable care caused the Plaintiff to suffer harm from the sexual harassment.

**COUNT NINE:  VIOLATION OF THE FCRA 15 U.S.C. § 1681**

111.

Plaintiff re-alleges paragraphs 11-60 as if set forth fully herein.

112.

Defendant accessed Plaintiff's consumer report for non-permissible purposes, in willfull and intentional violation of <u>Section 604</u> of U.S. Code, 15 U.S.C. § 1681 et seq.

113.

Defendant did not have Plaintiff's permission to access her consumer report.

114.

Defendant's knowing, intentional violations and actions were in "reckless disregard of a requirement" of the FCRA, entitling Plaintiff to actual damages and statutory damages from $100-$1,000 per violation plus punitive damages.

**WHEREFORE**, Plaintiff judgment as follows:

(a)      General damages for mental and emotional suffering caused by Defendant's misconduct;

(b)      Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

(c)      Special damages and/or liquidated damages for lost wages and benefits and prejudgment interest thereon;

(d)          Reasonable attorney's fees and expenses of litigation;

(e)          Trial by jury as to all issues;

(f)          Prejudgment interest at the rate allowed by law;

(g)          Declaratory relief to the effect that Defendant has violated

             Plaintiff's statutory rights;

(h)          Injunctive relief of reinstatement, or front pay in lieu thereof,

             and prohibiting Defendant from further unlawful conduct of the

             type described herein; and

(i)          All other relief to which she may be entitled.

Respectfully submitted the 22nd day of September, 2020.

**BARRETT & FARAHANY**

 s/ *Adian R. Miller*
Adian R. Miller
Georgia Bar No. 794647

*Attorney for Amber Edwards*

1100 Peachtree Street, N.E., Suite 500
Atlanta, GA 30309
(404) 214-0120
(404) 214-0125 Facsimile
adian@justiceatwork.com